IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK MULLICA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 11-4034 |
| | : | |
| v. | : | |
| | : | |
| MINNESOTA LIFE INSURANCE CO. et al. | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Jones, II, J.                                                       September 26, 2013

      Plaintiff, in his Second Amended Complaint, brought three Counts against Minnesota Life Insurance Co. ("MLIC"), Arkema Inc. ("Arkema"), Mercer (US) Inc., and Mercer HR Services, LLC. ("Mercer") for a breach of fiduciary duty regarding the denial of life insurance compensation following his wife's death. The Second Amended Complaint asserts claims under the Employee Retirement Income Security Act ("ERISA"), provisions 29 U.S.C. §1132(a)(1)(B) and 40 P.S. §532.6. Following Plaintiff's Second Amended Complaint, on March 16, 2012, all three Defendants filed Motions to Dismiss. Now before this Court, seeking to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), are MLIC's Motion to Dismiss ("MLIC Def. Mot. to Dismiss") (Dkt. No. 44), Arkema's Motion to Dismiss ("Arkema Def. Mot. to Dismiss") (Dkt. No. 47), and Mercer's Motion to Dismiss ("Mercer Def. Mot. to Dismiss") (Dkt. No. 48). The Court heard Oral Argument on the pending motions on June 20, 2012 (Dkt. No. 60). For the reasons that follow, Defendants' Motions will be granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

Frank J. Mullica was an employee at Arkema beginning in November 1999 and his employee insurance began during that time. (Second Amended Complaint (SAC) ¶2). While MLIC provided group life insurance to the employers, Arkema was the "policyholder and Plan Administrator" and Mercer was the "Benefits Administrator." (*Id.* at ¶¶ 3A-3B; Mullica Ex., ECF No. 31-4, p. 22).

Plaintiff married Lauren Benitez-Mullica in August, 2007 and the couple separated in the fall of 2009. (*Id.* at ¶ 9). Shortly after they married in 2007, the "spousal life [for $150,000] and accidental death and dismemberment (AD&D) insurance [for $213,000] began," with Plaintiff as the beneficiary. (*Id.* at ¶¶ 2, 10). Due to the pending divorce process, Plaintiff relied on the language of the Summary Plan Description (SPD) and terminated the coverage of the decedent in November 2009, which Plaintiff believed was required as part of their "legal separation." (*Id.* at ¶¶ 12A-B).[1] Plaintiff relied on the language of the SPD, but argues that "the term 'legally separated' in MLIC's policies and the SPD had no legal meaning and therefore, was ambiguous and misleading." (*Id.* at ¶ 13). Plaintiff and the decedent were never informed of the actual termination of the policy. (*Id.* at ¶ 15).

Following the death of Benitez-Mullica in January 2010, MLIC initiated its claims investigation as to whether Plaintiff and the decedent were "legally separated." (*Id.* at ¶ 17).

---

[1] The Plan states that employees are prohibited from making "mid-year election changes" unless certain circumstances warrant a change: "qualified status changes that allow you to change your life and AD&D insurance elections include: marriage, divorce, legal separation or annulment." (MLIC Ex. C, ECF No. 16-3, p. 8). The Plan states that "[a]n insured dependent's coverage ends on the earliest of the following: … (3) the last day for which premium contributions have been made following an insured employee's written request that insurance on his or her dependents be terminated." (MLIC Ex. F, ECF No. 16-11, p.3). Another clause stated that "if an insured dependent's coverage under this rider terminates because he or she is no longer eligible, or because of termination or amendment of this rider, the insurance may be converted to a policy of individual insurance with Minnesota Life." (*Id.*)

2

Plaintiff also supplied MLIC with the death certificate, stating that the death was caused by a drug overdose in March 2010--an event not covered under the AD&D portion of the policy. (*Id.* at ¶ 18). Due to some overpayment by Plaintiff, MLIC tried to rectify this separate situation in April, 2010, by offering to reimburse Plaintiff the amount he overpaid in premiums on the decedent's insurance. (*Id.* at ¶ 19). On May 3, 2010, after investigating the claim, MLIC denied Plaintiff's claim due to his termination of the policy for the decedent and with the belief that only $50,000 of the $150,000 in coverage was ever issued.. (*Id.* at ¶¶ 20-21).

In the denial letter to Plaintiff, MLIC did not specify that the cause of death was excluded from the AD&D coverage, which prompted Plaintiff to hire counsel and request all documents used in the claims investigation process. (*Id.* at ¶¶ 22-25).[2] After further correspondence, Plaintiff initiated an appeal of MLIC's denial of coverage. (SAC at ¶¶ 26-29). Pursuant to the SPD, "the Claims Administrator had 60 days to 'review and answer' the 'appeal;'" however, after three months, Plaintiff received no response and MLIC had not requested an extension. (*Id.* at ¶ 30-31).

Five months later, counsel for MLIC wrote Plaintiff to inform him of the company's decision to deny the appeal. (*Id.* at ¶ 32). Plaintiff and his counsel allege that the lapse in time was MLIC performing "essentially a second claims review made under the guise of deciding plaintiff's appeal," using documents that were different from those used in the first claim investigation, which Plaintiff alleges is against Plan procedures. (*Id.* at ¶¶ 33-34). Furthermore, Plaintiff requested all documents MLIC used in the process, which he was entitled to, and alleges that he did not receive everything. (*Id.*). Plaintiff alleges that MLIC violated its fiduciary obligations

---

[2] The Plan states that "in no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:… (7) drugs…absorbed, inhaled, ingested, or injected as prescribed." (MLIC Ex. K, ECF No. 16-12, p. 10).

3

when it denied Plaintiff benefits pursuant to ERISA §502(a)(1)(B) and 29 U.S.C. §1132(a)(1)(B). Consequently , Plaintiff brought suit to recover the benefits he alleges are due to him under the Plan. (*Id.* at ¶¶ 37-38).

Plaintiff also named Mercer and Arkema in the suit based on their possible "[creation] or [participation] in creating or distributing the confusing and/or misleading documents at issue described in paragraphs Nos. 11-15 and 30 and 30." (*Id.* at ¶¶ 41, 45). Plaintiff further alleges that Mercer "operated and maintained Arkema Benefits Center," while Arkema "administered the Plan" and thus both have a fiduciary duty to the plaintiff. (*Id.* at ¶¶ 42, 44 respectively).

## II. <u>LEGAL STANDARD</u>

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id*. (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation."). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is

contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232). [3]

### III. DISCUSSION

#### A. Claims Against MLIC

MLIC's Motion to Dismiss is denied in part and granted in part. Each of the claims is discussed separately.[4]

*1. Preemption*[5]

"To assure uniform treatment, Congress provided that where a plan is covered by ERISA, all state laws relating to the [ERISA-qualified] plan are preempted." *Tannenbaum v. Unum Life Ins. Co. of America,* 2006 WL 2671405, at *2 (E.D.Pa. Sept. 15, 2006) (citations omitted). However, if a state law directly regulates the business of insurance companies within the state, then the state law is "saved" for preemption purposes. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).

---

[3] Plaintiff alleges that Defendants Motions to Dismiss are actually Motions for Summary Judgment. Despite Plaintiff's contentions to the contrary, the motions before this court are indeed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and thus, the proper standard for dismissal is applied.

[4] MLIC raised objections regarding Plaintiff's standing. This Court finds that Plaintiff has proper standing to bring these claims. Claims are dismissed for lack of standing in precedential cases when there is champerty, which does not exist in this case, or when the plaintiff has no real interest in the case. Plaintiff has standing because he alleges that he was in fact aggrieved in the matter at hand when he lost a significant amount of money, has a colorable claim that he may prevail in a suit for benefits after possible involuntary termination, and falls within the zone of interest for ERISA protection because he was the beneficiary. *See Baldwin v. University of Pittsburgh Medical Center*, 636 F.3d 69 (3d Cir. 2011); *Leuthner v. Blue Cross and Blue Shield of Northeastern Pennsylvania*, 454 F.3d 120 (3d Cir. 2006); *In Re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 242 F.3d 497 (3d Cir. 2001); *Belfonte v. Miller,* 212 Pa. Super. 508 (Pa. Super. Ct. 1968); *Clark v. Cambria County*, 747 A.2d 1242 (Pa. Commw. Ct. 2000).

[5] Mercer and Arkema also raised objections on the grounds of preemption in their legal memorandum. The court draws the same conclusion for these two Defendants and finds Plaintiff's claims are not preempted for the same reasons discussed herein.

The question here is whether the Pennsylvania Insurance Act, under which Plaintiff brings his claims, is pre-empted by ERISA.

As discussed in *Metropolitan Life Ins. Co. v. Taylor*, if a "suit [is] by a beneficiary to recover benefits from a covered plan, [then] it falls directly under §502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." 481 U.S. 58, 62-3 (1987). The United States Supreme Court in *Pilot Life Ins. Co. v. Dedeux* further explained ERISA preemption, noting that state law is generally preempted but "the savings clause excepts from the pre-emption clause laws that 'regulate insurance.'" *Pilot Life*, 481 U.S. at 45. The plaintiff in *Pilot Life* sued his life insurance company for claims somewhat similar to Mullica's, such as breach of fiduciary duty, in relation to the processing of a claim for benefits. Despite plaintiff's suit against the life insurance company, the Court explained that "if a state law 'relate[s] to… employee benefit plan[s],' it is pre-empted." *Id.* As a result, the Court ultimately preempted his claims. *Id.; see also Bieber v. Nace*, No. 1:1-CV-0718, 2011 WL 6180719 (M.D.Pa. Dec. 13, 2011). The purpose and legislative intent of ERISA must also be considered when interpreting a state law to determine whether it must be pre-empted. Similar to the plaintiff in *Pilot Life*, Mullica's claims would be pre-empted because of "the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life*, 481 U.S. at 54. However, there are still other factors to be considered before preemption is given force. *See FMC Corp. v. Holliday,* 498 U.S. 52 (1990). (state laws regulating insurance companies are pre-empted if the plan at the center of the claim is self-funded); *Hall v. Pennwalt Group Comprehensive Medical Expense Benefits Plan*, 746 F.Supp. 507 (E.D.Pa. 1988). (setting forth three-factor test to determine if a state law "falls within the Act's reference to the 'business of insurance.'")

The Pennsylvania statute here regulates insurance companies and policies, but it is unclear how far the statute reaches in terms of its effect on these benefits plans. Furthermore, it is unclear whether MLIC is a self-funded plan; this determination would affect the possible preemption of the plan from state laws. For the present motion, however, this Court must accept Plaintiff's allegations regarding the plans as true. Discovery may yield information regarding the plan's operation that defeats these allegations. In that event, the defendants may renew their arguments at the summary judgment stage in light of the facts established in discovery.

*2. Involuntary Termination*

Plaintiff's conversion of rights claim was adequately plead and thus, MLIC's Motion to Dismiss is denied in that respect. Although contracts generally evidence the parties' intentions, "ambiguous terms that appear clear and unambiguous on their face, but whose meaning is made uncertain due to facts beyond the four corners of the contract, suffer from latent ambiguity." *Baldwin v. University of Pittsburgh Medical Center*, 636 F.3d 69, 76 (3d Cir. 2011).

Pursuant to 40 P.S. §532.6 provision 8, "conversion rights" refer to the individual insurance a person is entitled to receive following a triggering event, like "termination of employment or of membership in the class or classes eligible for coverage under the policy." Under the MLIC Group Life policy, conversion rights are given to dependents if they are "no longer eligible." It seems Mullica interpreted the "legal separation" to mean his dependent was no longer eligible, and therefore believed that his dependent would receive conversion rights. When there is ambiguity of this nature, "courts have the responsibility to determine as a matter of law whether contract terms are clear or ambiguous." *Id.* These ambiguities are best resolved by the fact

7

finders. *Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 385 (Pa. Super. Ct. 1984). At the very least, Plaintiff has adequately pleaded this claim.

As the Court in *In re Unisys* detailed, "a breach of fiduciary claim may be premised on either a misrepresentation or an omission" in a plan for insurance coverage and benefits. *In Re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 579 F.3d 220, 228 (3d Cir. 2009). To establish such a breach a plaintiff must demonstrate that: (1) the defendant was 'acting' in fiduciary capacity; (2) the defendant made 'affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries'; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation." *Id.* MLIC clearly acted as a fiduciary in relationship by administering and retaining discretionary responsibility over the Plan at issue. *In Re Unisys* suggests looking at the second and third elements in conjunction, stating that a "misleading statement or omission by a fiduciary" is material if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed" choice. *Id.* (quoting *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000)). To determine this, the Court must consider whether the fiduciary "knew or should have known that a beneficiary would be confused' by the statement." *Id.* (quoting *Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Foundation*, 334 F.3d 365, 386 (3d Cir. 2003)). Based on the facts as alleged, it is Plaintiff's contention that MLIC could have anticipated that a beneficiary, like Plaintiff, would be confused by the term "legal separation." It is also arguably apparent that Plaintiff relied on this "purported misrepresentation" to his detriment because he cancelled the decedent's insurance before it was actually necessary. Thus, with respect to the detrimental reliance claim, the motion to dismiss is denied because Mullica could present facts for which relief could be granted.

Despite the possible ambiguity in the term "legal separation," which Plaintiff claims motivated his decision to terminate his wife's insurance, he cannot support a suit for conversion of rights under the accidental death and dismemberment insurance ("AD&D policy"), thus this part of the claim must be dismissed. Courts in the Third Circuit have provided relief for plaintiffs when they have detrimentally relied on ambiguous plan language, but when the language is clear and unambiguous, relief will not be granted. *In Re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896, 908 (3d Cir. 1995), *see also International Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine*, 188 F.3d 130, 151 (3d Cir. 1999).

Regardless of whether the decedent was still covered by the plan, due to the manner by which she died, the decedent would not have received the benefits for AD&D. Drug overdose is not reimbursed under the AD&D policy even when a dependent is covered, and further, AD&D rights are not eligible for conversion upon termination, regardless of the reason. This part of the plan was unambiguous and thus, Plaintiff has no valid claim with respect to the AD&D policy. Therefore, there exists no set of facts that Mullica could set forth for which the $213,000 for the AD&D damages could be granted.

   3. *Equitable Estoppel*

Plaintiff's equitable estoppel claim is dismissed. MLIC attempts to shift responsibility to Arkema for acceptance of the overpayment, but because Arkema is not an agent and cannot be held liable, MLIC would be liable for the acceptance of Plaintiff's overpayment. *Bahas v. Equitable Life Assurance Society of US*, 128 Pa. Super. 167 (Pa. Super. Ct. 1937). It does not appear, however, that MLIC accepted these payments with bad faith.

The Third Circuit has recognized that the "extraordinary circumstances" required for estoppel "generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or the commission of fraud." *Jordan v. Federal Express Corporation,* 116 F.3d 1005, 1011 (3d Cir. 1997).

Mullica did not assert that the erroneous payments were accepted in bad faith and this precludes his claim from proceeding. Mullica did not allege bad faith acceptance on behalf of MLIC and does not dispute that the overpayment was not realized. In absence of these allegations, these claims cannot stand. In addition to the absence of allegations, MLIC attempted to reimburse Mullica for the full amount when they became aware of the oversight. Simply put, there is nothing in the Complaint that can support a bad faith claim.

*4. Notice*

Plaintiff argues that MLIC is liable to him for failing to provide notice. This argument fails, however, because there was no "triggering event" or change made to the plan which would require notice. The Third Circuit has held that notice is required by an insurance company primarily when there has been an amendment to the plan or a triggering event. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011). In *CIGNA Corp. v. Amara*, the Court discussed the notice requirements regarding a beneficiary's plan. The Court stated that it must look first to the language and terms of the contract and plan, because Plaintiff has brought suit pursuant to 29 U.S.C.A. §1132(a)(1)(B). As shown in Exhibit "F," the policy does not require that notice be given following the termination of the benefits by the dependent.[6]

---

[6] The policy states that "[a]n insured dependent's coverage ends on the earliest of the following:… (3) the last day for which premium contributions have been made following an

Furthermore, as the *CIGNA* court highlighted, statutory language must be considered in claims of this nature. ERISA "simply require[s] the plan administrator to write and distribute written notices that are 'sufficiently accurate and comprehensive to reasonably apprise' plan participants and beneficiaries of 'their rights and obligations under the plan.'" *CIGNA*, 131 S.Ct. at 1881. Proper notice must be given should the plan, or the benefits within, change. *See also Frommert v. Conkright*, 433 F.3d 254, 262-3 (2d Cir. 2006). Unlike the facts here, the Plaintiff in *CIGNA* sued alleging improper notice after a change to the benefits and coverage that he did not voluntarily initiate. Conversely, Mullica has no basis for a claim against MLIC for improper notice because there were no amendments made to the plan and this was not a triggering event as specified by the plan.

Finally, the language of the 40 P.S. §532 does not require notice to be given in circumstances like termination, unless the plan is terminated due to non-payment. Therefore, there is no right under the applicable statutes or the Plan itself that requires notice.

## B. Claims Against Arkema and Mercer

**Proper Defendants under ERISA Section 502(a)(1)(b)**

The Third Circuit has held that "[i]n a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.,* 311 F. App'x 556, 558 (3d Cir. 2009). The "defining feature of this inquiry, is whether the defendant has "exercis[ed] control over the administration of benefits." *Id.*

---

insured employee's written request that insurance on his or her dependents be terminated." (MLIC Ex. F, ECF No. 16-11, p.3).

Arkema argues that Mullica's claim fails because although it was the "nominal Plan administrator" it had delegated the responsibility for administering the Plan to Mercer and MLIC. Indeed, the Third Circuit has rejected ERISA claims against an employer nominally titled as "Plan Administrator," "where the Plaintiff could not demonstrate that the employer had any authority or responsibility for administering benefits under the Plan." *See id.*

At the Motion to Dismiss stage, Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 663 (2009). Here, there must be an allegation that Arkema had "authority or responsibility" for administering the plan benefits, beyond conclusory allegations. The SPD makes clear that Arkema is not involved in the decision-making process whatsoever. The SPD grants Arkema discretion to "designate other organizations or persons to carry out specific responsibilities in administering the [Plan] including, but not limited to, . . . the responsibility for administering and managing the [Plan], including the processing and payment of claims under the plan and the related recordkeeping," in addition to "responsibility to act as Claims Administrator to review claims and claim denials under the [Plan] . . . ." Arkema did just that, farming out these responsibilities to MLIC. MLIC was appointed the named fiduciary under the Plan and had sole control and final decision-making authority over the benefits claims process. Plaintiff's claim that Arkema "administered the Plan" is merely conclusory, as it is bolstered by no other allegation that Arkema was involved in, or had discretion over, the denial of Plaintiff's claim. The allegations in the complaint, read together with the SPD provisions, fail to state sufficient facts to establish that Arkema exercised any discretion with respect to the administration of benefits under the SPD. Therefore, Arkema is not a proper defendant with respect to Section 502(a)(1)(b).

Defendant Mercer likewise argues that it is not a proper party. As stated in *Evans,* the "proper defendant is the plan itself or a person who controls the administration of benefits under the plan." While it was a closer call with Arkema due to it having been the nominal Plan administrator, here there is no doubt that Plaintiff has failed to adequately plead that Mercer is the plan administrator. Plaintiff merely makes the conclusory allegation that "Mercer controlled the administration of benefits under the plan," but plead no other facts that Mercer played any part in the claims process. Plaintiff has alleged no facts that Mercer was involved or had any control over whether a claim was approved or denied, or to determine eligibility under the Plan.

**ERISA Section 502(a)(3)**

Section 502(a)(3), ERISA's "catchall provision," allows a participant, beneficiary, or fiduciary to sue "to enjoin any act or practice which violates" ERISA or "to obtain other appropriate equitable relief. . . to redress such violations." Section 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Unlike Section 502(a)(1)(b), any party may be a proper party with respect to subsection 502(a)(3), so long as the person or entity was a fiduciary or "knowingly participated in a fiduciary's breach of a substantive provision of ERISA." To allege and prove a breach of fiduciary duty for misrepresentation, a plaintiff must allege: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Burstein v. Retirement Account Plan For Employees of Allegheny Health, Education and Research Foundation*, 334 F.3d 365, 384 (3d Cir.2003). *See also Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 578 (3d Cir.2006) ("any plaintiff who has relied on an inaccurate or misleading term of an

SPD to his or her detriment can recover on a claim for breach of fiduciary duty . . . , or, in extraordinary circumstances, an equitable estoppel claim under ERISA section 502(a)(3)(B))."); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 75–76 (3d. Cir.2001) ("[I]f an employee proves that an employer, acting as a fiduciary, made an inaccurate statement holding a substantial likelihood of misleading a reasonable employee into making a harmful decision regarding benefits, and that he relied to his detriment on that statement in making such a decision, the employee is entitled to equitable relief.") Plaintiff asserts that Arkema and Mercer "either created or participated in creating or distributing the confusing/and or misleading documents at issue." Plaintiff also attached an exhibit that at least supports the plausibility that Arkema and Mercer were involved in drafting the SPD documents, which could potentially create liability. Taking these allegations as true, Plaintiff's Second Amended Complaint asserts facts sufficient to meet the prima facie elements of a Section 502(a)(3) claim.

As to the nature of relief requested, Plaintiff demands, *inter alia*, "all death benefits on all defendant's policies." Although this is a request for monetary damages, which is ordinarily a legal remedy, following the United States Supreme Court's ruling in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), this request for relief, coupled with Plaintiff's general prayer for appropriate equitable relief, is sufficient under the pleading standards as an authorized remedy under ERISA. It is also notable that the *Amara* Court posited that a "surcharge" was appropriate given the facts in that case, because the defendants were fiduciaries. Whether Arkema and Mercer are fiduciaries, and whether or not there has been a breach of a fiduciary duty is a fact-intensive inquiry that cannot be determined at this stage. Although defendants argue that they were not acting as fiduciaries, taking the allegations in the complaint as true, such a conclusion is plausible. Determinations as to fiduciary duty are more appropriate for a motion

for summary judgment and Plaintiffs are entitled to discovery on this topic with respect to defendants Mercer and Arkema. Such discovery will be illuminating in light of recent Supreme Court and Circuit Court precedent.

## IV. CONCLUSION

For the aforementioned reasons, the Motions to Dismiss of Defendants MLIC, Arkema, and Mercer are granted in part and denied in part. An appropriate order follows.